1   James J. Ficenec (SBN - 152172)
    Sellar Hazard Manning Ficenec & Lai
2   1800 Sutter Street, Ste. 460
    Concord, CA 94520
3   Telephone:  (925) 938-1430
    Facsimile: (925) 926-7508
4   Email:  jficenec@sellarlaw.com

5
    James P. McCarthy
6   Michael Olafson
    James M. Lockhart
7   DeAnne M. Hilgers
8   Lindquist & Vennum P.L.L.P.
    4200 IDS Center
9   80 South 8th Street
10  Minneapolis, MN 55402
    Telephone:  (612) 371-3211
11  Facsimile:  (612) 371-3207
12  Email:  jmccarthy@lindquist.com
    Email:  molafson@lindquist.com
13  Email:  jlockhart@lindquist.com
    Email:  dhilgers@lindquist.com
14

15  Counsel for Plaintiff

16                    UNITED STATES DISTRICT COURT

17               NORTHERN DISTRICT OF CALIFORNIA

18  DRAM CLAIMS LIQUIDATION TRUST, by its Trustee,        Case No. _____
    WELLS FARGO BANK, N.A.,
19
                                                          **COMPLAINT FOR DAMAGES**
20              Plaintiff,                                **AND INJUNCTIVE RELIEF**

21  v.
                                                          **(1)  VIOLATION OF THE**
22                                                        **      SHERMAN ACT**
    HYNIX SEMICONDUCTOR, INC.;                            **      PURSUANT TO 15 U.S.C. § 1**
23  HYNIX SEMICONDUCTOR AMERICA, INC.;
    SAMSUNG ELECTRONICS CO., LTD.;                        **(2)  VIOLATION OF**
24  SAMSUNG SEMICONDUCTOR, INC.;                          **      CALIFORNIA'S**
    MICRON TECHNOLOGY, INC.;                              **      CARTWRIGHT ACT**
25  MICRON SEMICONDUCTOR PRODUCTS, INC.;                  **      PURSUANT TO §§ 16700 ET**
26  CRUCIAL TECHNOLOGY, INC.;                             **      SEQ. OF CAL. BUS. &**
                                                          **      PROF. CODE**
27
    Doc# 2239116\2
28

                    Complaint of DRAM Claims Liquidation Trust

| | |
|---|---|
| 1<br>2<br>3<br>4<br>5<br>6<br>7<br>8<br>9<br>10<br>11<br>12<br>13<br>14 | INFINEON TECHNOLOGIES AG;<br>INFINEON TECHNOLOGIES NORTH AMERICA<br>CORP.;<br>MOSEL VITELIC INC.;<br>MOSEL VITELIC CORPORATION;<br>NANYA TECHNOLOGY CORPORATION;<br>NANYA TECHNOLOGY CORPORATION USA;<br>WINBOND ELECTRONICS CORPORATION;<br>WINBOND ELECTRONICS CORPORATION<br>AMERICA;<br>ELPIDA MEMORY, INC.;<br>ELPIDA MEMORY (USA) INC.;<br>NEC CORPORATION;<br>NEC ELECTRONICS CORPORATION;<br>NEC ELECTRONICS AMERICA, INC.;<br>MITSUBISHI ELECTRIC CORPORATION;<br>MITSUBISHI ELECTRIC & ELECTRONICS USA, INC.;<br>and<br>Does 1-10,<br><br>               Defendants. | **(3)  VIOLATION OF<br>     CALIFORNIA'S UNFAIR<br>     COMPETITION ACT<br>     PURSUANT TO §§ 17200 ET<br>     SEQ OF CAL. BUS. & PROF.<br>     CODE**<br><br>__DEMAND FOR JURY TRIAL__ |

## I.     NATURE OF THE ACTION

1.     The DRAM Claims Liquidation Trust (the "Trust"), by its Trustee, Wells Fargo

Bank, National Association ("Wells Fargo"), brings this action to recover damages incurred as a

result of long-standing collusion by suppliers of dynamic random access memory ("DRAM")

chips.  The Trust was created as part of the Chapter 11 reorganization of Silicon Graphics, Inc.

and subsidiaries and holds by assignment the DRAM price-fixing claims of Silicon Graphics,

Inc. and its subsidiaries.  As described in more detail below, certain of the defendants in this

action and their employees pled guilty between 2004 and 2006 to participating in an unlawful

conspiracy among the world's DRAM suppliers.  During the term of the conspiracy, DRAM

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

suppliers conspired to control production capacity, raise or slow the decline of prices, allocate customers, and otherwise unlawfully overcharge DRAM purchasers. During the term of the conspiracy, Silicon Graphics, Inc., and its subsidiaries purchased many millions of dollars of DRAM chips from the conspirators.

2.      Following an investigation by the United States Department of Justice, five of the largest suppliers of DRAM chips have admitted their involvement in the conspiracy. These five DRAM chip suppliers are Defendants Hynix Semiconductor, Inc.; Elpida Memory, Inc.; Micron Technology, Inc.; Samsung Electronics Co., Ltd.; Samsung Semiconductor, Inc.; and Infineon Technologies AG. Micron Technology, Inc., obtained amnesty from criminal prosecution by being the first conspirator to admit its participation in the illegal cartel. Infineon Technologies AG, Hynix Semiconductor, Inc., Elpida Memory, Inc., Samsung Electronics, Co., Ltd., and Samsung Semiconductor, Inc. have entered guilty pleas and paid fines based on their involvement in the illegal activities. Additionally, senior officials of Micron Technology, Inc., Elpida Memory (USA) Inc., Hynix Semiconductor, Inc., Hynix Semiconductor America Inc., Samsung Electronics Co., Ltd., Samsung Semiconductor Inc. and Infineon Technologies AG have pled guilty to colluding with their competitors to fix and raise DRAM prices. The Department of Justice investigation is continuing.

3.      Plaintiff seeks treble damages and injunctive relief to remedy those injuries sustained by Silicon Graphics, Inc. and its subsidiaries and related entities (collectively "SGI") as a result of Defendants' illegal activities.

3

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

## II.   JURISDICTION AND VENUE

4.      Plaintiff brings this action under §§ 4, 12 and 16 of the Clayton Act (15 U.S.C. §§ 15, 22 and 26) (2000 suppl. 2) for treble damages and injunctive relief, as well as reasonable attorney fees and costs, with respect to the injuries sustained by SGI from violations by Defendants of § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 (2000 suppl. 2).

5.      Plaintiff also brings this action pursuant to Section 16750(a) of the California Business and Professions Code, for injunctive relief and treble damages that Plaintiffs sustained due to violations by the Defendants and their co-conspirators of Section 16700 *et seq.* of the California Business and Professions Code (the "Cartwright Act").  Plaintiff's claims also are brought pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from and an injunction against the defendants due to their violations of Section 17200 *et seq.* of the California Business and Professions Code (the "Unfair Competition Act").

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1337(a). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1376(a).

7.      In the alternative, this Court has jurisdiction over this action pursuant to the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a (2000 suppl. 2), in that SGI's injuries were proximately caused by increased prices for DRAM in the United States.

4

8.      Venue is proper in this judicial district pursuant to 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d) in that at least one of the Defendants resides in this judicial district, is licensed to do business or is doing business in this judicial district.  Venue is also proper in this judicial district pursuant to the provisions of Sections 16750(a) and 7203 of the California Business and Professions Code.  The unlawful conduct undertaken pursuant to the combination and conspiracy alleged herein had and has a direct effect on business within the State of California and the judicial district and trade and commerce described below is carried on to a significant degree within the State of California and this judicial district.

9.      This Court has *in personam* jurisdiction over each of the Defendants because, *inter alia*, each Defendant (a) transacted business throughout the United States including this district; (b) manufactured, sold, shipped, and delivered substantial quantities of DRAM throughout the United States including this district; (c) had substantial contacts with the United States; and (d) was engaged in an illegal scheme and price-fixing conspiracy that was directed at and had the intended effect of causing injury to persons and entities residing in, located in, or doing business throughout the United States, including this district.

### III.    PARTIES

10.    Wells Fargo is a federally chartered bank and subsidiary of Wells Fargo & Company, a Delaware corporation, with its headquarters in San Francisco, California. Silicon Graphics, Inc. is a Delaware Corporation with its principal place of business in Sunnyvale, California.  Wells Fargo is the Trustee of the Trust which was created as part of the Chapter 11 reorganization of Silicon Graphics, Inc. to hold and prosecute the DRAM price fixing claims of

5

Doc# 2239116\2

---

Silicon Graphics Inc. and its subsidiaries. The Trust and the assignment of claims to the Trust were authorized by the Order, dated September 19, 2006 confirming Debtor's First Amended Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated July 27, 2006, as Modified, entered by the U.S. Bankruptcy Court for the Southern District of New York. Following entry of that Order, Silicon Graphics, Inc., Silicon Graphics Federal, Inc., Silicon Graphics World Trade Corporation, Silicon Graphics Real Estate, Inc., Silicon Studio, Inc., Cray Research L.L.C., Cray Research America Latina Ltd., Cray Research Eastern Europe Ltd., Cray Research India Ltd., Cray Research International, Inc., Cray Financial Corporation, Cray Asia/Pacific, Inc., Paragraph International, Inc., and WTI Development, Inc. assigned all their DRAM price-fixing claims to the Trust.

11.    SGI provides products, services, and solutions for use in high-performance computing and storage. During the relevant timeframe, SGI was a direct and indirect purchaser of DRAM from Defendants. SGI made centralized purchasing decisions in the United States. These U.S. based decisions set prices for all of SGI's DRAM purchases, whether delivered in the U.S. or in Europe. Each defendant that sold DRAM [and memory modules primarily comprised of DRAM] directly to SGI set its price in the United States and in US dollars for all DRAM purchased by SGI. These Defendants treated SGI as a unitary business entity and delivered DRAM to SGI in the United States and in Europe pursuant to the SGI company-wide price established in the United States. Defendants' and their co-conspirators' price-fixing was the proximate cause of artificially elevated prices paid by SGI for DRAM, whether delivered in the United States or in Europe. To the extent any DRAM was delivered to SGI outside of the

6

Doc# 2239116\2

United States, the artificially elevated price paid was a direct, substantial and foreseeable result of the U.S. domestic effect of Defendants' illegal price fixing conduct.  Many of the DRAM-containing products assembled by SGI in Europe were for sale by SGI in interstate commerce in the United States.

12.     Defendant Hynix Semiconductor, Inc., a Korean corporation, maintains its offices at SAN 136-1, Ami-Ri, Bubal-eub, Ichon, Kyoungki-do, Korea.  During the time covered in this Complaint, Hynix Semiconductor, Inc., a manufacturer of DRAM, sold and distributed DRAM throughout the world, including the United States.  On information and belief, as a Korea-based manufacturer of DRAM with facilities throughout the world, Hynix Semiconductor, Inc. manipulated the price of DRAM charged around the globe, including the United States, by intentionally restricting the production capacity of its manufacturing plants located in Asia and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM.  As a result of Hynix Semiconductor, Inc.'s illegal activities directed at the United States and elsewhere, SGI paid artificially-inflated prices for DRAM.

13.     Defendant Hynix Semiconductor America, Inc., a California corporation, maintains its offices at 3101 North First Street, San Jose, California 95134.  Upon information and belief, it is a wholly-owned and controlled subsidiary of defendant Hynix Semiconductor, Inc. (collectively referred to as "Hynix").  During the time period covered in this Complaint, Hynix Semiconductor America, Inc. sold and distributed DRAM throughout the United States.

7

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

14.     Defendant Samsung Electronics Co., Ltd., a Korean corporation, maintains its executive offices at Samsung Main Building, 250-2 ga, Taepyung-ro, Chung-gu, Seoul, Korea. During the time covered in this Complaint, Samsung Electronics Co., Ltd. manufactured, sold and distributed DRAM throughout the world, including the United States.  On information and belief, as a Korea-based manufacturer of DRAM with facilities throughout the world, Samsung Electronics Co., Ltd. manipulated the price of DRAM charged around the globe, including the United States, by intentionally restricting the production capacity of its manufacturing plants located in Asia and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM.  As a result of Samsung Electronics Co., Ltd.'s illegal activities directed at the United States and elsewhere, SGI paid artificially-inflated prices for DRAM.

15.     Defendant Samsung Semiconductor, Inc., a California corporation, maintains its offices at 3655 North First Street, San Jose, California 95134.  On information and belief, Samsung Semiconductor, Inc. is a wholly-owned and controlled subsidiary of defendant Samsung Electronics Co., Ltd. (collectively referred to as "Samsung").  During the time covered in this Complaint, Samsung Semiconductor, Inc. sold and distributed DRAM throughout the United States.

16.     Defendant Micron Technology, Inc., a Delaware corporation, maintains its principal place of business at 8000 South Federal Way, Boise, Idaho 83707.  During the time period covered in this Complaint, Micron Technology, Inc., a designer, developer, and manufacturer of DRAM, sold and distributed DRAM throughout the world, including the United

8

Complaint of DRAM Claims Liquidation Trust

States.  On information and belief, Micron Technology, Inc. manipulated the price of DRAM charged around the globe, including the United States, by intentionally restricting the production capacity of its manufacturing plants located throughout the world and directing its affiliates to charge collusively-established prices for DRAM.  As a result of Micron Technology, Inc.'s illegal activities directed at the United States and elsewhere, SGI paid artificially-inflated prices for DRAM.

17.    Defendant Micron Semiconductor Products, Inc., an Idaho corporation, maintains its principal place of business at 8000 South Federal Way, Boise, Idaho, and is a wholly-owned subsidiary of Defendant Micron Technology, Inc. (collectively referred to as "Micron").  During the time period covered in this Complaint, Micron Semiconductor Products, Inc. sold DRAM through its Crucial Technology retail sales division to computer manufacturers and other end users throughout the United States and Europe.

18.    Defendant Crucial Technology, Inc. ("Crucial") is a corporation with its principal place of business in Boise, Idaho.  Upon information and belief, Crucial is a wholly-owned subsidiary of Micron Technology, Inc. (collectively referred to as "Micron") and operates the distribution business of Micron Technology, Inc.

19.    Defendant Infineon Technologies AG, a German corporation, maintains its headquarters at St. Martin-Str. 53, 81669, Munich, Germany.  During the time period covered in this Complaint, Infineon Technologies AG, a manufacturer of DRAM, sold, and distributed DRAM throughout the world, including the United States.  On information and belief, as a German-based manufacturer of DRAM with facilities throughout the world, Infineon

9

Doc# 2239116\2

Technologies AG manipulated the price of DRAM charged around the globe, including the

United States, by intentionally restricting the production capacity of its manufacturing plants

located throughout the world and directing its international affiliates, including those located in

the United States, to charge collusively-established prices for DRAM.  As a result of Infineon

Technology AG's illegal activities directed at the United States and elsewhere, SGI paid

artificially-inflated prices for DRAM.

20.    Defendant Infineon Technologies North America Corp., a Delaware corporation,

maintains offices at 1730 North First Street, San Jose, California 95112.  Upon information and

belief, Infineon Technologies North America Corp. is a wholly-owned and controlled subsidiary

of Defendant Infineon Technologies AG (collectively referred to as "Infineon").  During the

time period covered in this Complaint, Infineon Technologies North America Corp. sold and

distributed DRAM throughout the United States.  Recently, Infineon spun-off its DRAM

business, which is now operating as Qimonda, a wholly-owned subsidiary of Infineon

Technologies AG.

21.    Defendant Mosel Vitelic Inc., a Taiwan corporation, maintains its headquarters at

No. 19 LiHsin Road, Science Based Industrial Park, Hsinchu, Taiwan, R.O.C.  During the time

period covered in this Complaint, Mosel Vitelic Inc., a manufacturer of DRAM, sold and

distributed DRAM throughout the world, including the United States.  On information and

belief, as a Taiwanese-based manufacturer of DRAM with facilities throughout the world, Mosel

Vitelic Inc.  manipulated the price of DRAM charged around the globe, including the United

States, by intentionally restricting the production capacity of its manufacturing plants located

10

Complaint of DRAM Claims Liquidation Trust

throughout the world and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM. As a result of Mosel Vitelic Inc.'s illegal activities directed at the United States and elsewhere, SGI paid artificially-inflated prices for DRAM.

22.     Defendant Mosel Vitelic Corporation, a California corporation, maintains its offices at 3910 North First Street, San Jose, California 95134. On information and belief, Mosel Vitelic Corporation is a wholly-owned subsidiary of Defendant Mosel Vitelic Inc. (collectively referred to as "Mosel Vitelic"). During the time period covered in this Complaint, Mosel Vitelic sold and distributed DRAM throughout the United States.

23.     Defendant Nanya Technology Corporation, a Taiwan corporation, maintains its headquarters at HWA YA Technology Park, 669 Fu Hsing 3rd Rd. Keushan, Taoyuan, Taiwan. During the time period covered in this Complaint, Nanya Technology Corporation, a manufacturer of DRAM, sold and distributed DRAM throughout the world, including the United States. On information and belief, as a Taiwanese-based manufacturer of DRAM with facilities throughout the world, Nanya Technology Corporation manipulated the price of DRAM charged around the globe, including the United States, by intentionally restricting the production capacity of its manufacturing plants located throughout the world and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM. As a result of Nanya Technology Corporation's illegal activities directed at the United States and elsewhere, SGI paid artificially-inflated prices for DRAM.

11

24.     Defendant Nanya Technology Corporation USA, a California Corporation, maintains its offices at 675 E. Brokaw Road, San Jose, California, 95112.  On information and belief, Nanya Technology Corporation USA is a wholly-owned and controlled subsidiary of defendant Nanya Technology Corporation (collectively referred to as "Nanya").  In addition to its primary U.S. office in San Jose, California, Nanya Technology Corporation operates sales and technical support offices in San Jose, California, Raleigh, North Carolina, and Austin, Texas, and operates a memory design center in Houston, Texas.  During the time period covered in this Complaint, Nanya Technology Corporation USA sold and distributed DRAM throughout the United States.

25.     Defendant Winbond Electronics Corporation, a Taiwan corporation, is headquartered at No. 4, Creaton Road 3 and No. 9, Li-Shin Road, Science-Based Industrial Park, Hsinchu, Taiwan, R.O.C.  During the time period covered in this Complaint, Winbond manufactured, sold and distributed DRAM throughout the world, including the United States. On information and belief, as a Taiwanese-based manufacturer of DRAM with facilities throughout the world, Winbond Electronics Corporation manipulated the price of DRAM charged around the globe, including the United States, by intentionally restricting the production capacity of its manufacturing plants located throughout the world and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM.  As a result of Winbond Electronics Corporation's illegal activities directed at the United States and elsewhere, SGI paid artificially-inflated prices for DRAM.

12

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

26.     Defendant Winbond Electronics Corporation America, a Delaware corporation, is located at 2727 North First Street, San Jose, California 95134. Upon information and belief, Winbond Electronics Corporation America is a wholly-owned subsidiary of Winbond Electronics Corporation (collectively referred to as "Winbond"). During the time covered in this Complaint, Winbond Electronics Corporation America sold and distributed DRAM throughout the United States.

27.     Defendant Elpida Memory, Inc., a Japanese corporation, maintains its executive offices at Sumitomo Seimei Yaesu Bldg., 3F, 2-1 Yaseu 2-chome, Chuo-ku, Tokyo, Japan. During the time period covered in this Complaint, Elpida a manufacturer of DRAM, sold and distributed DRAM throughout the world, including the United States. On information and belief, as a Japan-based manufacturer of DRAM with facilities throughout the world, Elpida Memory, Inc. manipulated the price of DRAM charged around the globe, including the United States, by intentionally restricting the production capacity of its manufacturing plants located throughout the world and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM. As a result of Elpida Memory, Inc.'s illegal activities directed at the United States and elsewhere, SGI paid artificially-inflated prices for DRAM.

28.     Defendant Elpida Memory (USA) Inc., a Delaware Corporation, is located at 2001 Walsh Avenue, Santa Clara, California 95050, and is a wholly-owned subsidiary of Elpida Memory, Inc. (collectively referred to as "Elpida"). During the time period covered in this

13

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

Complaint, Elpida Memory (USA) Inc., sold and distributed DRAM throughout the United States.

29.     Defendant NEC Corporation is a Japanese Corporation which maintains its office at 7-1 Shiba 5-Chou Minato-ku, Tokyo 108-8001, Japan.  Defendant NEC Electronics Corporation, a Japanese corporation which maintains its offices at 1753 Shimonumabe, Nakahar-ku, Kawasaki-shi, Kanagawa, 211-8668, Japan and is a majority owned subsidiary of NEC Corporation.  During the time period of this complaint, NEC Corporation and NEC Electronics Corporation sold and distributed DRAM throughout the world, including the United States.  On information and belief, as a Japan-based manufacturer of DRAM with facilities throughout the world, NEC Corporation and NEC Electronics Corporation manipulated the price of DRAM charged around the globe, including the United States, by intentionally restricting the production capacity of its manufacturing plants located throughout the world and directing its international affiliates, including those located in the United States, to charge collusively-established prices for DRAM.  As a result of the illegal activities of NEC Corporation and NEC Electronics Corporation directed at the United States and elsewhere, SGI paid artificially-inflated prices for DRAM.

30.     Defendant NEC Electronics America, Inc., a California corporation, maintains its corporate headquarters at 2880 Scott Boulevard, Santa Clara, California 95050.  Upon information and belief, defendant NEC Electronics America, Inc. was a subsidiary of NEC Corporation and NEC Electronics Corporation (collectively referred to as "NEC").  During the

14

1   time period covered in this Complaint, NEC Electronics America, Inc. sold and distributed

2   DRAM throughout the United States.

3       31.     Defendant Mitsubishi Electric Corporation, a Japanese corporation, is

4   headquartered at Tokyo Building, 2-7-3, Marunouchi, Chiyoda-ku, Tokyo 100-8310, Japan.

5
    During the time period covered in this Complaint, Mitsubishi Electric Corporation, a
6
7   manufacturer of DRAM, sold and distributed DRAM throughout the United States.  On

8   information and belief, as a Japan-based manufacturer of DRAM with facilities throughout the

9   world, Mitsubishi Electric Corporation manipulated the price of DRAM charged around the
10
    globe, including the United States, by intentionally restricting the production capacity of its
11
12  manufacturing plants located throughout the world and directing its international affiliates,

13  including those located in the United States, to charge collusively-established prices for DRAM.

14  As a result of Mitsubishi Electric Corporation's illegal activities directed at the United States
15
    and elsewhere, SGI paid artificially-inflated prices for DRAM.
16
17      32.     Defendant Mitsubishi Electric & Electronics USA, Inc., a Delaware corporation, is

18  headquartered at 5665 Plaza Drive, Cypress, CA  90630-0003.  Upon information and belief,

19
    Mitsubishi Electric & Electronics USA, Inc. is a wholly-owned subsidiary of Mitsubishi Electric
20
21  Corporation (collectively referred to as "Mitsubishi").  During the time period covered in this

22  Complaint, Mitsubishi Electric & Electronics USA, Inc., sold and distributed DRAM throughout

23  the world, including the United States.

24      33.     Doe Defendants 1 through 10 are persons whose identities are as yet unknown to
25
26  Plaintiff and who have participated in the violations of the federal and state antitrust laws for

27                                              15

28  Doc# 2239116\2

which Plaintiff seeks relief, and have performed acts and made statements in furtherance thereof.

34.     Various individuals, partnerships, corporations, and associations other than the Defendants named in this Complaint (the "Co-Conspirators") (and jointly with the named Defendants, "Defendants") have participated in the violations federal and state antitrust laws for which Plaintiff seeks relief, and have performed acts and made statements in furtherance thereof.

35.     Whenever in this Complaint reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, agents, employees, or representatives while they were actively engaged in the management, direction, control, or transaction of the corporation's business or affairs.

## IV.     TRADE AND COMMERCE

36.     During the relevant period, Defendants sold and shipped substantial quantities of DRAM in continuous and uninterrupted flow of interstate and international commerce to customers located in countries and states other than the countries and states in which Defendants manufacture DRAM.

37.     The business activities of Defendants that are the subject of this Complaint were within the flow of, and substantially affected, interstate and international trade and commerce. The global conspiracy in which Defendants participated had a direct, substantial and reasonably foreseeable effect on United States commerce.

16

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

38.     During the relevant period, Defendants made most of the DRAM sales in the United States market and in the global market.

## V.     STATEMENT OF FACTS

39.     Defendants manufacture, sell, and distribute memory chips throughout the world. Memory chips store data in a wide variety of computing and electronic devices.  Memory chips are used in the manufacture of, and are critical to the functioning of such devices as personal computers (PCs), workstations, servers, printers, fax machines, digital cameras and video recorders, video game equipment, personal digital assistants, and cellular and wireless telephones.

40.     DRAM is the dominant, most common form of memory chip. "Random Access Memory" means that the data, stored in the form of 0s and 1s, can be accessed directly from any part of the memory, rather than having to proceed sequentially from some staffing place. DRAM is called "dynamic" because it must have its storage cells refreshed or given a new electronic charge every few milliseconds.

41.     A DRAM chip is a large-scale integrated circuit with simple structures, and is fairly easy to manufacture.  Accordingly, DRAM is a commodity, with each of Defendants' products being freely interchangeable with the products of another company.

42.     DRAM is sold in individual chips, or in modules with several chips attached to each module.

17

43.     DRAM sales exceed $20 billion a year.  The world's top four makers of DRAM, all of whom are Defendants herein, control roughly 70% of the market.  The top six manufacturers control 96% of the DRAM market.

44.     The DRAM industry enjoyed an extended period of prosperity in the middle of the 1990s as the PC industry boomed.  During this time DRAM manufacturers could not meet the demand for their products.  Revenues from DRAM sales nearly tripled between 1993 and 1995.  DRAM manufacturers responded by building substantial new chip-making capacity.  Factories for the manufacture of DRAM chips are referred to as fabrication plants, or "fabs."

45.     In 1996, this new capacity, coupled with a decline in demand, led to pressure on Defendants to cut their prices.  Defendants responded by illegally conspiring to limit capacity and artificially fix and raise prices.

46.     Specifically, in December 1996, DRAM manufacturers attended a SyncLink Consortium.  SyncLink was a DRAM industry organization whose members consisted of DRAM suppliers.  During this December 1996 meeting, DRAM suppliers resolved to establish unified strategies to address market concerns.  Although the organization initially appears to have been created to address technology concerns, the industry reorganized the consortium in January 1999, causing the new president of the organization to acknowledge that the focus of the group would be to "co-ordinate instead of develop new technology."

47.     Executives from DRAM suppliers met again in Japan in January 1997.  During this meeting the participants agreed that they would need to continue communicating with each other.  The participants also agreed to use an e-mail distribution software program then known

18

Doc# 2239116\2

as a reflector e-mail, which permitted industry executives to exchange information via e-mail quickly and confidentially.

48.     Shortly after this meeting, in February 1997, DRAM suppliers curtailed production at their DRAM manufacturing facilities, or "fabs," as part of a collusive effort to maintain and raise prices.

49.     This coordinated drop in production had an immediate, but temporary, effect on prices, which rose during the second quarter of 1997. Prices then began to fall again in the second half of 1997.

50.     As DRAM prices continued to fall into early 1998, DRAM manufacturers held at least two meetings, in April and June, to discuss the problem. The second meeting, held on June 25, was called an "Executive Summit" and was attended by industry executives. One of the topics at the Summit was how to "Manage Price Competition, Profitability." Upon information and belief, during these meetings, and in communications before and after these meetings, Defendants discussed supply and pricing issues, and agreed that they would limit their capacity to artificially decrease the supply of, and increase, maintain, or control the price of, DRAM chips.

51.     Between June and September 1998 every major DRAM manufacturer announced it was curtailing or shutting down DRAM production facilities because of a lack of demand for

19

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

the product.  Defendant Hynix's corporate predecessor, Hyundai,[1] and Samsung each shut down their facilities for approximately one to two weeks in the summer of 1998.  Other suppliers communicated their intentions to slash production.

52.     This coordinated withdrawal of production capacity had an immediate effect on prices, which began to rise in June 1998, and increased steadily throughout the rest of the year.

53.     In August 1998, an e-mail circulated among DRAM suppliers, which warned that during the ramp-up in production of a new DRAM standard, DRAM vendors "will need a constant flow of information to help make wise decisions and to walk the fine line between a pleasant shortage and a disastrous over-supply." A Hyundai executive noted that a shortage would please DRAM manufacturers because "prices go up."

54.     A former Samsung employee, Devin Cole, has admitted that before he left Samsung in July 1998, he spoke with competitors regarding price issues.  Cole informed federal authorities that these conversations led to agreements on a "range pact" that included "the ranges of prices, where each competitor felt that others would price in the range, and whether each competitor would move prices 'a little' or 'a lot.'" Upon information and belief, this evidence is corroborated by Cole's own notes and other documents.

55.     DRAM prices continued to climb steadily in 1999.  During this time, Defendants continued their illegal communications with each other about prices, market share, and supply.

---

[1] The Hyundai Group's semiconductor subsidiary was named Hyundai Electronics.  In April 2001 Hyundai renamed this subsidiary Hynix Semiconductor.  In August 2001 Hyundai spun off the company.

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

In July 1999, a Hyundai executive sent an e-mail to Farhad Tabrizi, the vice president of marketing for Hyundai and head of the DRAM industry group SLDRAM Inc. (the successor organization to SyncLink). The e-mail states that "[w]ith Samsung building significant amounts of product, we need to work with them to limit the supply in the market, otherwise we both will be competing for market share which will result in an oversupply. We have to meet with Samsung and discuss our and their production plan, TAM analysis and targeted market share." In response, another Hyundai employee stated that he had "a connection in samsung" [sic] and offered to set up a meeting.

56.    A short time later, Samsung and Hyundai both began raising prices at an accelerated rate. Indeed, in September 1999, industry sources noted that South Korea's DRAM suppliers -- Samsung and Hyundai -- were raising prices in one-to-two week intervals.

57.    Despite their unlawful and secret cooperation to reduce DRAM production and increase price, Defendants publicly misrepresented that DRAM prices escalated due to increased demand resulting from strong sales of low-priced PCs incorporating large quantities of DRAM. In a September 13, 1999, Electronic News article, Avo Kanadjian, vice president of marketing of Defendant Samsung Semiconductor, Inc. said: "Because we see the value PC and free PCs entering the market at extraordinary numbers, DRAM oversupply has silently gone into a shortage." Chee-Wai Ho, director of product marketing for memory products at Infineon Technologies AG, agreed.

58.    Because of Defendants' collusive activities, DRAM prices remained artificially inflated from the middle of 1998 through the fall of 2000.

21

Doc# 2239116\2

59.     Following a brief drop in prices in late 2000, Defendants held further meetings and communications to conspire with each other to control production and to raise prices. Alfred Censullo, a former Micron sales manager, has admitted that Micron spoke with competitors about pricing. Censullo pleaded guilty in January 2004 to federal charges of obstruction of justice, for altering and withholding documents responsive to a grand jury subpoena issued to Micron. At his sentencing hearing, Censullo acknowledged that these documents consisted of notes that he took during weekly conference calls with other regional sales managers at Micron, who like Censullo were responsible for DRAM customers. During these calls the managers would discuss price recommendations for customers and the prices at which competitors would sell their products to these customers. Upon information and belief, Censullo's notes reflected this pricing information and identified communications between Micron and its competitors about sales and pricing.

60.     These collusive activities perpetrated by Defendants were successful. By the end of 2001, the 128 MB DRAM price had increased by 95% over the November 6, 2001, spot price.

61.     Nevertheless, Defendants again publicly, and falsely, attributed the increase in DRAM price to legitimate market forces. In a December 4, 2001, interview published on Simmtester.com, Steve Appleton, chief executive officer of Micron, was asked why prices had recently increased sharply and suddenly. He answered:

> "I have no idea. There clearly was a belated increase in demand as the seasonal rebound we had expected two-and-a-half months earlier finally kicked in. And, clearly the Japanese are cutting back their DRAM

22

production.  Even Hynix, which is so unpredictable, cut some production by temporarily closing its Eugene, Ore., fab.  When it was running at 40K wafer capacity a month, that fab alone probably had about 2.5% of the world's DRAM production."

62.     DRAM price increases, as well as Defendants' conspiracy, continued into 2002.  From November 2001 to April 2002, DRAM prices tripled.  Jim Elliot, Associate Director of DRAM Marketing at Samsung Semiconductor, had telephone conversations on average one or two times a week between the last quarter of 2001 until June 2002 with three employees of Nanya Technology Corporation USA (Michael Walsh, Director of DRAM sales and marketing, and Bryan Donahue and David Dwyer, sales account managers), in which they discussed and exchanged information on DRAM pricing of the two companies.  And in May 2002, Thomas Chang of Mosel Vitelic stated: "We're trying to encourage a price of US $3.  That's the consensus... You don't need to have a meeting.  You just need to have a phone call.  Everybody knows each other.  We just said 'try not to sell below US $3." On the other hand, in a press release issued on April 15, 2002, Hynix represented that its increased revenues resulted from increased demand in the DRAM market.

63.     On or about September 4, 2004, Defendant Infineon Technologies AG entered into a plea agreement with the government, pursuant to which it agreed to plead guilty to conspiring to fix prices in the DRAM market between July 1999 and June 2002.

64.     In December 2004, four Infineon executives, T. Rudd Corwin, Peter Schaefer, Gunter Hefner, and Heinrich Florian, pled guilty to the DRAM price fixing conspiracy.  These

23

Complaint of DRAM Claims Liquidation Trust

Infineon executives were sentenced to jail terms of four to six months and each was fined $250,000.

65. On April 21, 2005, the Department of Justice announced it had entered into a plea agreement with Defendant Hynix Semiconductor, Inc., pursuant to which Hynix agreed to plead guilty to conspiring to fix prices in the DRAM market between April 1999 and June 2002.

66. On or about October 13, 2005, the Department of Justice announced it had entered into a plea agreement with Defendant Samsung pursuant to which Samsung agreed to plead guilty to conspiring to fix prices in the DRAM market between April 1999 and June 2002. Samsung also agreed to pay a $300 million fine for participating in the price fixing conspiracy.

67. On or about January 30, 2006, the Department of Justice announced it had entered into a plea agreement with Defendant Elpida pursuant to which Elpida agreed to plead guilty to conspiring to fix prices in the DRAM market between April 1999 and June 2002.

68. On or about March 1, 2006, four Hynix executives, D.S. Kim, C.K. Chung, K.C. Suh, and C.Y. Chei, pleaded guilty to the DRAM price fixing conspiracy. These Hynix executives agreed to serve jail terms of five to eight months and to each pay a $250,000 fine.

69. Five Samsung executives have pled guilty to participation in the DRAM price fixing conspiracy. Sun Woo Lee, Yenghu Kong and Young Woo Lee pled guilty on March 23, 2006. In November 2006, Thomas Quinn, a San Jose, California Samsung executive, pled guilty to participating in the price fixing conspiracy in his capacity as vice-president of marketing for memory products at Samsung Semiconductor, Inc. In December, 2006, the then-president of Samsung Semiconductor, Inc. and former vice-president of sales of Samsung

24

Electronics Co., Ltd., Young Hwan Park, pled guilty to participation in the DRAM price fixing conspiracy.  The Samsung executives agreed to serve jail terms of 7-10 months and each agreed to pay $250,000 fine.

70.    In December, 2006, a former executive of Defendant Elpida, D. James Sogas, pled guilty for his participation in the DRAM price fixing conspiracy and was sentenced to 7 months in jail and to pay a $250,000 fine.

## VI.    VIOLATIONS ALLEGED

71.    Plaintiff incorporates by reference, as fully set forth, the allegations of paragraphs 1 through 70 of this Complaint.

## FIRST CAUSE OF ACTION

### (Violation of § 1 of The Sherman Act, 15 U.S.C. § 1, Against All Defendants)

72.    Beginning in or about January 1997, the exact date being unknown to Plaintiff, and continuing thereafter at least through 2002 (the "Cartel Period"), Defendants, by and through their officers, directors, employees, agents, or other representatives, entered into a continuing contract, combination or conspiracy to unreasonably restrain trade and commerce in violation of § 1 of the Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2).

73.    Defendants, by their unlawful conspiracy, artificially raised, inflated, and maintained the market price of DRAM as herein alleged.

74.    The contract, combination, or conspiracy consisted of a continuing agreement, understanding, and concert of action among Defendants and their Co-Conspirators, the

25

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

substantial terms of which were to fix, raise, maintain, and stabilize the prices of, and/or allocate the market for, DRAM they sold throughout the world, including the United States.

75.   Upon information and belief, for the purposes of formulating and effectuating their contract, combination, or conspiracy, Defendants did those things they contracted, combined, or conspired to do, including:

a.   participating in meetings and conversations to discuss the prices of and/or allocate the market for DRAM;

b.   agreeing to manipulate capacity, production, and prices so as to boost sagging DRAM prices in a manner that deprived direct purchasers of free and open competition;

c.   issuing price announcements and price quotations in accordance with the agreements reached; and

d.   selling DRAM to customers throughout the world, including the United States at artificially inflated and non-competitive prices.

76.   The above combination and conspiracy has had the following effects, among others:

a.   price competition in the sale of DRAM by Defendants has been restrained, suppressed, and eliminated throughout the world, including the United States;

b.   prices for DRAM sold by Defendants have been raised, fixed, maintained, and stabilized at artificially high and noncompetitive levels throughout the world, including the United States; and

26

c.    purchasers of DRAM from Defendants have been deprived of the benefit of free

and open competition in the purchase of DRAM.

77.    As a direct and proximate result of the unlawful conduct of Defendants and their

co-conspirators and in furtherance of their continuing contract, combination, and/or conspiracy,

SGI was injured in its business and property in that it has paid more for DRAM than it otherwise

would have paid in the absence of the Defendants' unlawful price fixing.

**SECOND CAUSE OF ACTION**

**(Violation of California's Cartwright Act Under §§ 16700 Et. Seq. of the California
Business and Professions Code Against All Defendants)**

78.    Plaintiff incorporates by reference, as if fully set forth, paragraphs 1 through 77 of

this Complaint.

79.    Beginning in or about January 1997, the exact date being unknown to Plaintiff,

and continuing thereafter at least through December 2002, Defendants by and through their

officers, directors, employees, agents, or other representatives violated Section 16700 *et seq.* of

the California Business and Professions Code ("Section 16700") or "the Cartwright Act") by

entering into and engaging in a continuing unlawful trust in restraint of trade and commerce, as

described above.  During this period, Defendants, and each of them, have effected this unlawful

trust, and violated Section 16700, by combining, conspiring, and/or agreeing to fix, raise,

stabilize, and maintain the prices of, and/or allocate the market for, DRAM at supra-competitive

levels.  Section 16720 of the Cartwright Act expressly forbids the creation of such unlawful

trusts.

27

Doc# 2239116\2

80.     The purpose of Defendants' unlawful combination, conspiracy, and/or agreement was to create artificially higher DRAM prices in the marketplace thereby providing Defendants, and each of them, with substantially higher revenues and profits than would otherwise have been the case in a truly competitive market.

81.     In forming, and in furtherance of, this unlawful combination, conspiracy, and/or agreement, Defendants engaged in acts, practices, and courses of conduct, which included, but are not limited to, the following:

a.     participating in meetings and/or discussions amongst themselves, as discussed more fully above, for the purpose of coordinating DRAM production reductions to limit supply and fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM;

b.     participating in meetings, discussions, and/or communications amongst themselves, as discussed more fully above, for the purpose of exchanging information about DRAM prices and setting price ranges for DRAM to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM;

c.     participating in meetings, discussions, and/or communications amongst themselves, as discussed more fully above, for the purpose of setting DRAM contract prices for customers to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM; and

28

Doc# 2239116\2

d.    using their best efforts to ensure that the prices each charged its customers for DRAM were within the price range, or at the same price, agreed to during the meetings, discussions, and/or communications held amongst themselves.

82.    As a direct consequence of the Defendants' acts, practices, and course of conduct in implementing the unlawful trust, the following have occurred:

a.    DRAM price competition has been restrained, suppressed, and/or eliminated, including, but not limited to, within and throughout the State of California;

b.    DRAM price has been fixed, raised, maintained, and stabilized at a high and artificial level, including, but not limited to, within and throughout the State of California;

c.    SGI was deprived of the benefit of free and openly competitive negotiations for DRAM in the marketplace; and

d.    SGI was forced to pay artificially high prices for DRAM for use in its computer systems and network products.

83.    As a direct and proximate result of Defendants' unlawful combination, conspiracy and/or agreement, SGI has been injured in its business and property in that it had to pay more for DRAM than it would have paid in an otherwise free and open marketplace.  Plaintiff is unable to state its damage claim with precision at this time, because that determination will require discovery and accounting analysis of Defendants' books and records.  Nevertheless, under Section 16750(a) of the California Business and Professions Code, Plaintiff is entitled to

29

Doc# 2239116\2

interest on the aforementioned sum from the dates of service of this Complaint until entry of

judgment thereon, to its costs of suit, including reasonable attorneys' fees and treble damages.

### THIRD CAUSE OF ACTION

**(Unfair Competition Under §§ 17200 Et. Seq. of the California Business and Professions Code Against All Defendants)**

84.    Plaintiff incorporates by reference, as if fully set forth, paragraphs 1 through 83 of this Complaint.

85.    Plaintiff brings this action pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from Defendants for acts, as alleged herein, that violate Section 17200 *et seq.* of the California Business and Professions Code, commonly known as the Unfair Competition Act.

86.    Beginning in or about January 1997, the exact date being unknown to Plaintiff, and continuing thereafter at least through 2002, Defendants by and through their officers, directors, employees, agents, or other representatives committed, and continue to commit, acts of unfair competition, as defined by Sections 17200 *et seq.* of the California Business and Professions Code. Defendants' acts of unfair competition, more fully alleged in paragraphs 1 through 82 above, included participating in an unlawful combination, conspiracy, and/or agreement to fix, raise, stabilize, and maintain the prices of, and/or allocate the market for, DRAM prices and making misrepresentations, or fraudulently concealing relevant information, concerning the reason for increased DRAM prices.

87.    Plaintiff has standing to bring this action because SGI purchased DRAM from Defendants during the period January 1997 to the present. In doing so, SGI was injured by

30

Doc# 2239116\2

Defendants' unlawful actions, because it paid more for DRAM than they otherwise would have, as described more fully above.  These higher prices caused SGI to lose money or customers, who could not afford to purchase SGI's products containing artificially high-priced DRAM.

88.    Defendants' conduct as alleged herein violates Section 17200 *et seq.*  The unlawful combination, conspiracy, and/or agreement effected by Defendants, as well as their acts, omissions, misrepresentations, practices, and non-disclosures in furtherance thereof, as alleged herein, constitute a common continuous and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200 *et seq.* including, but in no way limited to, the following:

a.    Defendants' violations of 15 U.S.C. § 1 and Section 16700 *et seq.*, of the California Business and Professions Code, as set forth in Paragraphs 1 through 83, above;

b.    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures regarding how they set DRAM prices, as described in Paragraphs 1 through 83 above – whether or not in violation of 15 U.S.C. § 1 and Section 16700 *et seq.* of the California Business and Professions Code, and whether or not concerted or independent acts – are otherwise unfair, unlawful, or fraudulent;

c.    Defendants' acts and practices, as alleged in paragraphs 1 through 83, are unfair to consumers of DRAM in the State of California and throughout the United States,

31

within the meaning of Section 17200 *et seq.*, California Business and Professions

Code; and

d.      Defendants' acts and practices, as alleged in paragraphs 1 through 83, are

fraudulent or deceptive within the meaning of Section 17200 *et seq.* of the

California Business and Professions Code.

89.      The aforementioned unlawful and unfair business practices of Defendants, and

each of them, have injured and present a continuing threat of injury to SGI. Defendants'

conduct has restrained competition in the DRAM market, has caused SGI to pay supra-

competitive and artificially-inflated prices for DRAM, and has deceived, and may continue to

deceive, SGI with respect to the manner in which the prices charged for DRAM have been and

will be set. Thus, Plaintiff is informed and believes that the Defendants may continue to persist

in this conduct and commit the aforementioned acts unless and until the Court orders the

Defendants to cease and desist.

90.      Defendants have been unjustly enriched as a result of their wrongful conduct and

Defendants' unfair competition. Plaintiff is accordingly entitled to equitable relief, including

restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits in

order to restore money lost by SGI and that may have been obtained by Defendants as a result of

such unfair business acts and practices, pursuant to the California Business and Professions

Code, Sections 17203 and 17204. In addition, Plaintiff seeks a permanent injunction enjoining

Defendants, and their officers, directors, employees, agents, or other representatives, and all

others acting in concert with Defendants to cease and desist from colluding together to fix, raise,

32

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

stabilize, and maintain the prices of, and/or allocate the market for, DRAM prices and making

misrepresentations, or fraudulently concealing relevant information, concerning the reason for

increased DRAM prices.

## VII.   TOLLING OF LIMITATIONS PERIOD DUE TO FRAUDULENT CONCEALMENT

91.    Plaintiff incorporates by reference, as if fully set forth, the allegations in Paragraph

1 through 90 of this Complaint.

92.    SGI had no knowledge of the combination and conspiracy alleged herein, or of

any facts that might have led to the discovery thereof in the exercise of reasonable diligence,

prior to the fall of 2004 when Infineon Technologies AG entered into a plea agreement with the

United States Department of Justice, pursuant to which Infineon agreed to plead guilty to

conspiracy to fix prices in the DRAM market between July 1999 and June 2002.

93.    Defendants engaged in a successful price-fixing conspiracy concerning DRAM

computer chips, which they affirmatively concealed, at least in the following respects:

a.    By meeting secretly to discuss prices, and customers and markets, of DRAM
computer chips sold in the U.S. and elsewhere; and

b.    By agreeing among themselves at meetings and in communications not to discuss
publicly, or otherwise reveal, the nature and substance of the acts and
communication in furtherance of the illegal scheme.

94.    Price increases of DRAM computer chips before and during the Cartel Period

were not unusual.  SGI was therefore conditioned by experience in dealing with the Defendants

of what they believed to be a competitive industry to expect price increases from time to time.

33

95.     SGI could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the Defendants and their Co-Conspirators to avoid detection and affirmatively conceal such violations including, without limitation, falsely attributing price increases to increased demand, shortages in supply, increased manufacturing costs, increased prices of labor and of raw materials, and/or insufficient production capacity.  Such false statements included, without limitation:

a.      The statement of Samsung's vice president of marketing, Avo Kanadjian, in a September 13, 1999, article, alleged more fully above in paragraph 57, that higher prices were attributable to a DRAM shortage, which was concurred upon by Chee-Wai Ho, director of product marketing for memory products at Infineon Technologies AG; and,

b.      Hynix's April 15, 2002, representation, alleged in paragraph 62, that its increased revenues resulted from increased demand in the DRAM market.

96.     Defendants also falsely informed their customers that they were unable to sell their products at a lower price due to increased manufacturing costs, increased prices of labor and of raw materials, and insufficient production capacity.

97.     As late as November, 2004, Steven Appleton, Chairman and CEO of Defendant Micron, made false statements that "the selling price of DRAM" did not reflect "anything except price and demand curve," that the Justice Department investigation was "theoretical" and that it was not possible to control DRAM prices "unless you have 100% control of the industry."

34

Doc# 2239116\2

1    Appleton subsequently admitted that his above-referenced public statements were not "the case"

2    and that there was evidence of DRAM price fixing by Micron employees and its competitors.

3        98.    SGI had no reason to disbelieve these statements.  Furthermore, most of the

4    explanations provided by Defendants involved non-public and/or proprietary information

5    completely in Defendants' control such that SGI could not verify their accuracy.  Defendants'

6    purported reasons for their price increases of DRAM were materially false and misleading and

7    were made for the purpose of concealing Defendants' anti-competitive scheme as alleged herein.

8    In truth, at all relevant times, the price of DRAM was artificially inflated and maintained as a

9    direct result of the Defendants' anti-competitive scheme, the operation of which was a

10   substantial (but undisclosed) factor in the pricing of DRAM during the relevant period.

11       99.    As a result of the fraudulent concealment of the conspiracy, Plaintiff asserts the

12   tolling of the applicable statute of limitations affecting Plaintiff's claims.

## VIII.  DAMAGES AND RESTITUTION

100.    During the relevant period, SGI purchased DRAM and DRAM-containing

products directly or indirectly from Defendants or their subsidiaries, agents, and/or affiliates,

and, by reason of the antitrust violations herein alleged, paid more for such products than it

would have paid in the absence of such antitrust violations.  As a result, SGI sustained damage

to its business and property and Defendants wrongfully acquired money from SGI in an amount

to be determined at trial.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against defendants as follows:

35

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

A.     A declaration that the unlawful combination and conspiracy alleged herein is an unreasonable restraint of trade in violation of §1 of the Sherman Act, 15 U.S.C. § 1 (2000 suppl. 2);

B.     An injunction enjoining, preliminarily and permanently, Defendants and all those acting in concert or in active participation with Defendants from continuing the unlawful combination and conspiracy alleged herein;

C.     An award to Plaintiff of damages, as provided by law, and joint and several judgments in favor of Plaintiff against Defendants, and each of them, in an amount to be trebled in accordance with federal law and California antitrust laws, if those are included;

D.     A declaration that the unlawful combination and conspiracy alleged herein is an unreasonable restraint of trade in commerce in violation of Sections 16700 *et seq.* and 17200 *et seq.* of the California Business and Professions Code;

E.     For restitution and disgorgement of revenues, earnings, profits, compensation, and benefits that have been wrongfully taken by Defendants from SGI as provided by 17200 *et seq.* of the California Business & Professions Code;

F.     An award to Plaintiff for the costs of this suit (including expert fees), and reasonable attorneys' fees, as provided by law; and

G.     An award to Plaintiff for such other and further relief as the nature of this case may require or as this Court deems just, equitable and proper.

36

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

Dated: March ___8___, 2007

SELLAR HAZARD MANNING
FICENEC & LAI

By: _____
   James J. Ficenec (SBN - 152172)
Sellar Hazard Manning Ficenec & Lai
1800 Sutter Street, Ste. 460
Concord, CA 94520
Telephone: (925) 938-1430
Facsimile: (925) 926-7508
Email: jficenec@sellarlaw.com

**LINDQUIST & VENNUM P.L.L.P.**
   James P. McCarthy
   Michael Olafson
   James M. Lockhart
   DeAnne M. Hilgers
   4200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 371-3211
Facsimile: (612) 371-3207
Email: jmccarthy@lindquist.com
Email: molafson@lindquist.com
Email: jlockhart@lindquist.com
Email: dhilgers@lindquist.com
**Counsel for Plaintiff**

37

Doc# 2239116\2

Complaint of DRAM Claims Liquidation Trust

1

## DEMAND FOR JURY TRIAL

2
101.   Plaintiff demands a trial by jury, pursuant to Federal Rules of Civil Procedure,

3
Rule 38(b), of all triable issues.

4
Dated:  March  8  , 2007

5

6
**SELLAR HAZARD MANNING FICENEC & LAI**

7
By: _____

8
James J. Ficenec (SBN - 152172)
Sellar Hazard Manning Ficenec & Lai

9
1800 Sutter Street, Ste. 460
Concord, CA 94520

10
Telephone:  (925) 938-1430
Facsimile: (925) 926-7508

11
Email:  jficenec@sellarlaw.com

12
**LINDQUIST & VENNUM P.L.L.P.**

13
James P. McCarthy
Michael Olafson

14
James M. Lockhart
DeAnne M. Hilgers

15
4200 IDS Center

16
80 South Eighth Street
Minneapolis, MN 55402

17
Telephone:  (612) 371-3211

18
Facsimile:  (612) 371-3207
Email:  jmccarthy@lindquist.com

19
Email:  molafson@lindquist.com

20
Email:  jlockhart@lindquist.com
Email:  dhilgers@lindquist.com

21

22
**Counsel for Plaintiff**

23

24

25

26
38

27

28